UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  24-CR-60129-LEIBOWITZ/AUGUSTIN-BIRCH

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

MICHAEL SPADORO,

        Defendant.
_____/

**<u>DEFENDANT MICHAEL SPADORO'S MOTION FOR A
DOWNWARD VARIANCE AND SENTENCING MEMORANDUM</u>**

COMES NOW the Defendant, MICHAEL SPADORO ("Defendant" or "Spadoro"), by and through undersigned counsel, to request a downward variance, based upon factors found in 18 U.S.C. § 3553(a).  The Defendant requests imposition of a sentence of 60 months and bases the request upon the following:

On April 14, 2025, the Defendant will present himself to the Court for sentencing.  The Defendant pleaded guilty to one count of transportation of a visual depiction of a minor engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(1).  He has a criminal history category I.  The Presentence Investigation Report ("PSR") found a total offense level of 32, which would yield a guideline sentencing range of 121 to 151 months.[1]  Defendant requests a downward variance to a sentence of 60 months incarceration pursuant to 18 U.S.C. § 3553.  Sixty months is the statutory minimum sentence under the count of conviction.

---

[1] The draft presentence investigation report found a total offense level of 32.  However, the PSR failed to include a two-level reduction pursuant to § 2G2.2(b)(1).  The Defendant filed an objection to the presentence investigation report's failure to include this reduction.  [ECF 38]  If the Court sustains that objection, the total offense level would become 30, which would yield a guideline range of 97-121 months.

1

**Section 3553(a) Factors**

Title 18, United States Code, Section 3553(a) contains the factors that the Court must apply to impose a reasonable sentence for the Defendant. Federal courts must consider all factors enunciated in Section 3553(a) when sentencing a defendant. Thus, in *United States v. Booker*, 543 U.S. 220, 245 (2005), the Supreme Court determined that the sentencing guidelines are now "effectively advisory." Moreover, district courts may not treat the sentencing guidelines as presumptively reasonable. *Rita v. United States*, 551 U.S. 338, 127 S.Ct. 2456 (2007); *United States v. Hunt*, 459 F.3d 1180 (11th Cir. 2006). In many cases application of the guidelines does not yield a reasonable sentence. *United States v. Hunt*, 459 F.3d at 1184. "It has been uniform and consistent in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996)

Section 3553(a) instructs that the "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" in Section 3553(a)(2). The section lists a series of factors for the Court to consider in passing sentence. Those factors, in pertinent part, are the following:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) The need for the sentence imposed -

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for –

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;

(5) any pertinent policy statement-

    (A) issued by the Sentencing Commission . . . and

    (B) that . . . is in effect on the date the defendant is sentenced[;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Also, 18 U.S.C. § 3582(a) requires the sentencing court to "consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that *imprisonment is not an appropriate means of promoting correction and rehabilitation*." (Emphasis added.)

**Application of Section 3553(a) Factors**

<u>Nature and Circumstances of the Offense</u>

    Mr. Spadoro pleaded guilty to transportation of child pornography. On August 18, 2023, he was returning from a family vacation. Mr. Spadoro flew into the United States from the Bahamas on an airplane that landed at Fort Lauderdale-Hollywood International Airport. [PSR, par. 13] At the time of his entry into the United States, the Defendant was drunk. During a secondary border examination, Customs and Border Protection ("CBP") agents seized Mr. Spadoro's telephone. [PSR, par. 17] Over the course of the next year, agents reviewed the contents of the seized telephone, finding images and videos of child pornography. [PSR, par. 20]

Mr. Spadoro fully accepts responsibility for his having the offending images on his telephone and transporting them into the United States. He does not seek to minimize the crime or has actions in any way.

Mr. Spadoro downloaded the images to his telephone for his use and no other. He did not intend to distribute them, broadcast or show the images to others, or to profit in any way. There is no evidence or even suggestion on the record that he held these images and videos for any reason other than possessing them for personal viewing.

The pornographic materials that Mr. Spadoro transported were images and videos downloaded to his smartphone. He did not intend to move the pornography internationally. His intention was to have his telephone with him when he was in the Bahamas. Mr. Spadoro simply gave no thought to the fact that he was transporting these materials. To the Defendant, he was simply taking his phone with him on vacation.

The first codification of Section 2252 occurred in 1978. It is important to recall that 1978 predated personal computers, electronic notebooks, and smartphones. The concept of portable devices capable of transporting thousands of images, which could be carried onto an airplane, was science fiction. At the time of codification transporting thousands of images would require the movement of photographs and tapes. It would have required significant planning and could not have resulted from an oversight. Importantly, it would have required significantly more active engagement than merely putting a cell phone in one's pocket.[2]

Mr. Spadoro held these images on his telephone. The statute of conviction makes criminal the transportation of child pornography. As discussed previously the transportation of the pornographic images occurred when Mr. Spadoro traveled while in possession of his telephone.

---

[2] Mr. Spadoro's use of his cellular telephone to possess the pictures qualifies for the sentencing enhancement

4

In today's technologically dependent world, computers are an indispensable means of communication and information retrieval. It is not an exaggeration to state that someone could use a cell phone to contain everything that would traditionally exist in a traditional office. Computers are integral to every facet of our daily lives. Thus, the statute should contemplate the transportation of pornographic images electronically by means of a computer. Thus, the two-level increase for the use of a computer amounts to double counting. Therefore, Mr. Spadoro believes that this should be a basis for a downward variance.

Mr. Spadoro received a four level guidelines enhancement under guidelines Section 2G2.2(b)(4)(A) for material depicting sadistic conduct. [PSR, par. 31] The CBP agents seized 307 images and 24 videos, which convert to a total of 2107 images [PSR, par. 21] During discovery counsel viewed one image depicting bondage. At present the record shows no other images of bondage. Thus, of these more than 2000 images, a tiny number, perhaps no more than a single image contained legally defined sadism or masochism. The four level enhancement for a miniscule number of qualifying photographs warrants a downward variance in sentencing.

In sum, Mr. Spadoro has pleaded guilty to a serious crime. The recommended sentence of 60 months' incarceration recognizes his serious violation of law but recognizes and balances his lack of willfully intending to transport the pornography, the incidental use of his smartphone to store and therefore transport the images, and the small number of photographs containing depictions of sadism compared to the full number of images should qualify Mr. Spadoro for a downward variance.

History and Characteristics of the Defendant

Mr. Spadoro is a 30-year-old man, who has overcome much in his life to achieve significant accomplishments at his youthful age. He was born into difficult and dysfunctional circumstances.

5

Mr. Spadoro was adopted as an infant and seized the opportunities that his adoptive parents offered him. He was able to realize success in life despite his early childhood disabilities and a long-time substance abuse problem.

Lisa Donofrio gave birth to Michael Spadoro in Elizabeth, New Jersey. Ms. Donofrio is deceased. The biological father of Mr. Spadoro is unknown. [PSR, par. 49] The Defendant's birth mother was unable to care for him. As a result, the New Jersey Department of Children and Families assumed the responsibility of caring for Mr. Spadoro.

When he was 18 months old, a family adopted Mr. Spadoro. George and Catherine Spadoro adopted Michael and his sister Emily. [PSR, paras. 49-50] His parents divorced when Mr. Spadoro was seven years of age. George Spadoro remarried Christina Desimone. Michael has maintained a close relationship with his father and stepmother. [PSR, par. 49] He also maintained a close relationship with his adoptive mother until her death.

Mr. Spadoro was born prematurely. Ms. Donofrio was addicted to drugs at the time of her pregnancy with the Defendant. As a result, Mr. Spadoro was born addicted to opiates, cocaine, alcohol, and nicotine. His first experience after birth was the process of life-threatening withdrawal from narcotics. This necessitated the baby's lengthy stay in the hospital to detoxify. Moreover, the exposure to drugs during his gestation period resulted in congenital physical issues. Mr. Spadoro was born with fused vertebrae, a missing disc and two bulging discs in his lower back, and scoliosis. [PSR, par. 59] Due to the addiction and drug abuse of his mother, Ms. Donofrio was neglectful. [PSR, par. 51] Therefore, the State of New Jersey removed Mr. Spadoro from the custody of his birth mother. The state then placed him in foster care for a brief period until the Spadoros adopted him. [PSR, paras. 49 and 51]

At 16 years of age Mr. Spadoro advised his mother and father that he was gay. His family was supportive of him after this revelation. However, he did not disclose his sexual orientation to others outside of his family and only wished for family members to do so with his express permission. [PSR, par. 53] The Defendant was struggling with his sexual orientation and feared the reaction of those whom he did not fully trust.

Mr. Spadoro suffered sexual abuse while growing up. While in kindergarten, a teacher molested him. He was again molested at the age of seven by a male babysitter who had been a camp counselor. This person engaged in inappropriate conduct with Mr. Spadoro both at the camp and while serving as a babysitter. Additionally, in 2021, an estranged partner of Mr. Spadoro held him hostage and violently raped him. [PSR, par. 54] This assault took place over a couple of days. Moreover, another partner of Mr. Spadoro also sexually assaulted him. The Defendant learned about sex at an incredibly immature age, which led to his early sexual experimentation. These traumatic experiences had profound effect on Mr. Spadoro and his sexual development.

The Defendant suffers from depression, panic attacks, anxiety, and obsessive-compulsive disorder. Moreover, he has had a pornography addiction since his teen years. [PSR, par. 65] He began treatment for his emotional and psychological illnesses while in his teens. After a hiatus in treatment, he is currently in group and individual therapy to address these illnesses. [PSR, par. 66]

The Defendant was a small child. As a result, he began treatment with human growth hormones when he was seven years old. A side effect of the treatments was a substantial increase in his sex drive.

Mr. Spadoro's physical and emotional ailments are greatly exacerbated by his nearly two-decade history of substance abuse. At the age of 12 Mr. Spadoro began using alcohol daily. He drank, daily, a minimum of 20 cocktails containing vodka until early 2024. This amounted to

7

approximately 1/3 gallon of vodka daily. He would drink until he lost consciousness. Then, upon awakening, he would continue drinking. [PSR, paras. 67 and 71] While once a promising soccer player, he gave up the sport in tenth grade to get high and watch pornography daily. This self-medication helped him to cope with thoughts of suicide. Since his arrest by Homeland Security, Mr. Spadoro has attended Alcoholics Anonymous meetings. Due to his success at AA, Mr. Spradoro now leads meetings and shares his experience with other addiction treatment groups. Additionally, he went into a detoxification program, and now attends an intensive outpatient drug program, which addresses relapse prevention. In the eight months since his release on bond, he has suffered a single relapse, which occurred in October 2024.

In addition to his abuse of alcohol the Defendant abused other substances. He began abusing marijuana when he was 12. Mr. Spadoro smoked four joints daily until July 2024. [PSR, par. 72] Less regularly, the Defendant abused inhalants, MDMA (ecstasy), powder cocaine, mushrooms, and unprescribed Adderall. [PSR, paras. 73-76] Between alcohol and drugs, the Defendant spent every day in a state of inebriation.

The Defendant was born addicted to narcotics and effectively remained a drug and alcohol abuser for his entire life. His addictions were of such severity that they controlled his life. Substance abuse reduced his capacity to evaluate the nature of his actions, often causing black outs after which he was unable to recall events. Mr. Spadoro's use of alcohol and drugs daily resulted in his continuously functioning in an inebriated state that led him to act in ways that would not have even considered while in a sober state. These actions included having child pornography on his telephone and casual and unhealthy sexual liaisons. However, it is vital to understand that, even while constantly inebriated, all his sexual encounters were with age-appropriate individuals. Importantly, the continued abuse lessened his ability to appreciate the nature of the pornographic

materials that Mr. Spadoro had in his possession on his telephone. The abuse of narcotics and alcohol coupled with his uncertainty about his sexuality, and the sexual assaults that he had experienced made him particularly susceptible to child pornography.

Even while suffering with significant addictions, Mr. Spadoro realized notable achievements. Once the Defendant began attending college, he found greater engagement. He became the student body president and was highly active in the campus LGBTQ organization. Additionally, he received recognition as an "up and coming" person in the LGBTQ community. Moreover, Mr. Spadoro became engaged in elective politics. He served as the political, financial, and field director for a New Jersey Congressperson. His worked helped this representative to become the first minority woman to serve as chairperson of the New Jersey Democratic State Committee. [PSR, par. 88]

In conclusion, Mr. Spadoro's personal factors warrant a downward variance to a sentence of 60 months. His dreadful prenatal experience and addiction at birth set the stage for a lifetime of alcohol and drug abuse. Moreover, the neglect suffered at the hands of his birth mother at the beginning of his life had to result in unknowable harm to him. His sexual doubts and concerns of rejection at the point of entering puberty exacerbated the problems that the Defendant faced. These factors caused mental illness and an addiction to pornography. Even in the face of all this negativity, Mr. Spadoro showed that he has talent and outstanding capabilities.

Mr. Spadoro committed this crime while in the clutch of addiction and mental illness. If Mr. Spadoro receives continuing therapy to address his addictions and mental illnesses, he is likely to have a successful and crime-free life. With proper post incarceration conditions, a sentence of 60 months incarceration is a just sentence for the crime that Mr. Spadoro has committed.

The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment

Respect for the law arises from sentences that are neither too lenient nor too harsh. Mr. Spadoro's offense was a serious crime. The Defendant believes that a sentence of 60 months' incarceration sends a proper message that federal courts will punish this type of criminal activity appropriately, particularly in a situation highlighted by the deplorable conditions of the defendant's birth and first months of life, his substance abuse problems, his sexual identity issues, and his lack of criminal history. Incarceration for 60 months is a substantial term of incarceration. It is particularly severe because Mr. Spadoro's crime resulted largely from external factors over which he had no control. For these reasons, the requested sentence reflects the seriousness of the offense, promotes respect for the law, and provides a just punishment.

The Need to Afford Adequate Deterrence to Others

This sentencing factor addresses the concept of general deterrence. The Court must weigh the necessity of imposing a sentence severe enough to deter others from committing the crime of transporting child pornography with the need to not punish Mr. Spadoro in an unduly harsh manner. Mr. Spadoro is facing a period of imprisonment for returning to the United States with images of child pornography on his telephone. To the extent that a punishment of 60 months' incarceration becomes known to others, it sends the message that involvement in this criminal activity will lead to five years of incarceration, even in instances where the Defendant did not actively intend to transport the images, and where his having such images resulted from significant personal factors.

The Need to Protect the Public

This sentencing factor addresses the concept of direct deterrence to prevent Mr. Spadoro from committing future crimes. A sentence of 60 months incarcerates Mr. Spadoro for a

significant period for this crime. It is unlikely that, after the conclusion of his sentence in this case, the Defendant will ever commit another offense. This is emphasized by the fact that Mr. Spadoro's criminal conduct arises primarily from his substance abuse, mental illness, and early childhood dysfunction, all of which he is addressing, should continue to be addressed through prison programs, and can be further addressed upon his release from custody. Moreover, as discussed below, persons with Mr. Spadoro's background and criminal history rarely move to more antisocial behavior or greater criminal activity.

<u>The Need to Provide the Defendant with Educational or Vocational Training or Medical Care</u>

Mr. Spadoro has a history of alcohol and substance abuse as well as mental and emotional illnesses. The statutory minimum incarceration of 60 months is much more than sufficient time for Mr. Spadoro to take part in Bureau of Prisons programs to accomplish the following: 1) address his addictions, 2) obtain treatment for his emotional and mental illnesses, and 3) continue his education.

Mr. Spadoro underwent a psychosexual evaluation by Zachary Yeoman, Psy.D. The evaluation took place in late 2024 and early 2025. Its focus was on the following: 1) whether Mr. Spadoro poses a risk to the community, 2) the likelihood of his committing an offense involving direct contact with the victim, and 3) recommendations for supervision and treatment of the Defendant. (A copy of the report will be filed with the Court under seal due to its confidential nature.)

Dr. Yeoman initially found that the Defendant has lived a hedonistic, irresponsible, and unstable life for many years due to his substance abuse and mental health problems. The cause of his online offense was the result of the substance abuse and mental health issues. It was not the result of antisocial personality traits.

Further, Dr. Yeoman is of the opinion that the number of images and videos found on Mr. Spadoro's telephone does not suggest the possibility or probability of recidivism. "[G]iven the mechanics of downloading CSAM,[3] it is easy to download large numbers of it. Virtually any download can result in hundreds if not thousands of images or videos, so it takes little effort to download large numbers of CSAM." Yeoman Report, p. 13.

Dr. Yeoman believes that curiosity, exploration, and hypersexuality are the factors that best explain Mr. Spadoro's commission of this crime. He believes: "This pathway to offending has the most favorable prognosis because it is not indicative of entrenched sexual psychopathology that predicts reoffense." Yeoman Report, p. 14. Moreover, it is easily supervised.

The report states that the best course of preventing further criminal actions by the Defendant rests on the following actions: 1) supervision, 2) ongoing intensive and long-term substance abuse treatment and mental health treatment, 3) psychotherapy, and 4) consistent and regularly scheduled work and leisure.

The Kinds of Sentences Available

Mr. Spadoro understands that the Court will sentence him to a term of incarceration followed by a period of supervised release. He does not appear to have sufficient funds to pay a fine. Moreover, the Defendant understands that the Court will order him to pay restitution to certain victims. [PSR, paras. 95-100].

The Sentencing Guideline Range and the Pertinent Policy Statements of the Sentencing Commission

As referenced above, the applicable advisory guideline range for Mr. Spadoro is Level 32, 121-151 months with a Criminal History Category I. Should the Court sustain Mr. Spadoro's

---

[3] Child sexual abuse material

objection to the failure to apply Section 2G2.2(b)(1) and apply a two-level reduction to the offense level, the result would be an offense level of 30 with a guideline range of 97-121 months.

There are no co-defendants in this case. Thus, there is no possibility of similarly situated defendants receiving sentences with unwarranted disparities.

The United States Sentencing Commission provided the following information for similarly situated defendants:

> (Under the current scenario presented in the PSR), During the last five fiscal years (FY 2019-2023) there were 332 defendants whose primary guideline was § 2G2.2, with a Final Offense Level of 32 and a Criminal History Category of I, after excluding defendants who received a § 5K1.1 assistance departure. For the 332 defendants (100%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 91 months and the median length of imprisonment imposed was 84 months."[4]

> (Under a scenario in which the Court Applies the § 2G2.2(b)(1) reduction), During the last five fiscal years (FY 2019-2023), there were 774 defendants whose primary guideline was § 2G2.2, with a Final Offense Level of 30 and a Criminal History Category of I, after excluding defendants who received a § 5K1.1 substantial assistance departure. For 765 defendants (99%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 71 months and the median length of imprisonment imposed was 72 months.[5]

Thus, these statistics demonstrate that downward variances are routinely ordered in cases where the charges and guidelines utilized are like the ones that are operative in Mr. Spadoro's sentencing. A sentence of 60 months' incarceration for Mr. Spadoro would not result in an unwarranted sentencing disparity. Moreover, it would fall within the heartland of all similar cases, which routinely grant downward variances to defendants.

[REMAINDER OF THE PAGE INTENTIONALLY LEFT BLANK]

---

[4] https://sinjsin.ussc.gov/analytics/saw.dll?Dashboard
[5] *Id.*

<u>The Need to Provide Restitution to Any Victims of the Offense</u>

Restitution is mandatory in this case. [PSR, par. 113] See also 18 U.S.C. § 5E1.1 and ECF 33.

## CONCLUSION

Based upon the sentencing factors enunciated in 18 U.S.C. § 3553, Defendant MICHAEL SPADORO respectfully requests that the Court grant his motion for a downward variance and sentence him to a term of incarceration of 60 months.

Respectfully submitted,

/s/ Richard A. Serafini
Richard A. Serafini, Esq.
Florida Bar No. 0972037
*Counsel for Michael Spadoro*

Serafini Law Office, LLC
One Financial Plaza
100 SE Third Avenue, Suite 2210
Fort Lauderdale, FL  33394
Telephone:  (754) 223-4718
Facsimile:  (800) 535-9913
Email:  ras@rserafinilaw.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically via CM/ECF this 7th day of April 2025.

/s/ Richard A. Serafini
Richard A. Serafini, Esq.